SALT LAKE COMMUNITY ACTION
PROGRAM, INC., Appellee,

v.

Donna SHALALA, Secretary, U.S. De-
partment of Health and Human
Services, et al., Appellants.

No. 92–5171.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 15, 1993.

Decided Dec. 28, 1993.

James L. Feldesman, Washington, DC, ar-
gued the cause for appellee. With him on
the brief were Michael B. Glomb, Arlington,
VA, and Edward T. Waters, Washington,
DC.

W. Mark Nebeker, Asst. U.S. Atty., Wash-
ington, DC, argued the cause for appellants.
With him on the briefs were J. Ramsey
Johnson, U.S. Atty., John D. Bates and R.
Craig Lawrence, Asst. U.S. Attys., Washing-
ton, DC.

Before: WALD, EDWARDS, and
SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit
Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Department of Health and Human
Services ("HHS") appeals from a District
Court order permanently enjoining HHS
from requiring Salt Lake Community Action
Program, Inc. ("SLCAP") to reimburse cer-
tain costs charged to SLCAP's Head Start
grant. SLCAP has been a recipient of Head
Start grant funds since 1965. In 1991, after
discovering that some $40,000 of SLCAP's
grant monies had been applied to costs that
were not allowable under agency regulations,
HHS advised SLCAP that it would be re-
quired to repay the sum from non-grant
funds. SLCAP appealed this decision to
HHS' Departmental Appeals Board ("DAB")
and the DAB upheld the disallowance.

SLCAP filed the instant suit in the District
Court, alleging, *inter alia,* that the relevant
cost allowance principles were both unconsti-
tutional and arbitrary and capricious.
SLCAP also claimed, for the first time, that
the DAB did not have jurisdiction to hear its
appeal. The District Court agreed that the
DAB lacked jurisdiction and held that

SLCAP instead was entitled to a full and fair hearing before an administrative law judge ("ALJ") under 42 U.S.C. § 9841(a)(3) (Supp. III 1991). *Salt Lake Community Action Program, Inc. v. Sullivan*, 785 F.Supp. 1013 (D.D.C.1992). HHS appeals, arguing both that SLCAP's jurisdictional claim was not properly before the District Court and that, in any event, the trial court erred in holding that the DAB lacked jurisdiction to adjudicate the disallowance.

We agree that SLCAP should have presented its jurisdictional challenge to the agency before raising it in the District Court, and that the District Court erred in concluding that the DAB lacked jurisdiction to adjudicate the disallowance in this case. Normally, the waiver issue alone might dispose of this appeal; we address the merits because it appears that in the proceeding below, the number and complexity of questions presented and the procedural posture of the case so obscured the waiver argument that the District Court did not take notice of the issue and did not address it. Thus, we address the merits of the jurisdictional issue because the parties and the District Court focused on it below, and because we seek to avoid any recurrence in future cases of the error made in this case.

## I. BACKGROUND

### A. *Factual Background*

Under the Head Start Act ("Act"), 42 U.S.C. §§ 9831–52 (1988 & Supp. III 1991), HHS is responsible for administering grants to private nonprofit and public agencies wishing to implement Head Start programs. To that end, HHS has adopted the principles set forth in Office of Management and Budget ("OMB") Circular A–122 which determine what costs a grantee properly may charge to its grant ("allowable" costs). *See* 45 C.F.R. § 74.174 (1992); 45 C.F.R. § 1301.10(a) (1992) (incorporating 45 C.F.R. Part 74 in Head Start regulations by reference). Head Start grantees receive advance payments

which they apply to the allowable costs of their operations; when HHS determines, as it did in this case, that certain charges are improper under the principles set forth in Circular A–122, those charges are said to be "disallowed", and the monies must be returned to the agency.

The underlying dispute in this case turns on the cost principles applicable to a Head Start grantee's ownership or lease of the physical space in which it administers its Head Start programs. Under Circular A–122, a property owner may charge to its grant either a use allowance or the cost of depreciation and operating expenses, but the cost of interest on a mortgage is never an allowable charge. By contrast, grantees who do not own property may charge the grant such rental fees as are reasonable in light of market conditions. Rental costs incurred under a less-than-arms-length transaction are allowable only up to the amount that would be permitted had title to the property vested in the organization.[1]

SLCAP, a nonprofit organization, has been a Head Start grantee since 1965. Prior to 1980, SLCAP rented space to house its operations. In 1980, SLCAP purchased a building and charged its Head Start grant for space allocated in the building to SLCAP's administrative functions. In 1988, needing additional space for its Head Start service programs, SLCAP purchased a second building, financed largely by a mortgage. Because Circular A–122 prohibited SLCAP from charging the cost of its mortgage payments to its Head Start grant, and SLCAP otherwise could not afford to meet its payments, SLCAP sold both buildings to a separate entity for a nominal sum and leased the space back.

### B. *Proceedings Before the Agency*

Following a 1989 audit, HHS' Office of Human Development Services ("OHDS") advised SLCAP that it could not charge its Head Start grant rental fees in excess of

---

1. SLCAP argues that the provisions with respect to space costs reflect an "anti-purchase policy," *i.e.* the regulations effectively discourage grantees from purchasing property, as opposed to renting, even where the total cost to the government of renting would be higher. Although SLCAP contended in the District Court that the anti-purchase policy is unconstitutional, that question is not before us on this appeal.

depreciation and operating expenses for the two buildings, because the sale-and-leaseback had not been an arms-length transaction. OHDS calculated that $40,323 in · costs already charged were impermissible and instructed SLCAP to repay the sum from non-grant funds.

SLCAP appealed the disallowance to the DAB pursuant to regulations that specifically vest that body with jurisdiction to hear disallowance disputes. *See* 45 C.F.R. Part 16, App. A, § C(a)(1) (1992). Before the DAB, SLCAP argued, *inter alia*, that its leases were in fact arms-length, that the rental costs charged to the government were reasonable, and that it should be granted a waiver from Circular A–122. It is undisputed that SLCAP never contended before the DAB that any other statute or regulation deprived the DAB of jurisdiction to determine the validity of the disallowance or that SLCAP was entitled to a hearing before an ALJ.

The DAB affirmed the disallowance in full on the grounds that the sale-and-leaseback transaction had been less than arms-length. *Salt Lake Community Action Program,* Decision No. 1261 (D.A.B.1991), *reprinted in* Appendix for Appellants ("A.A.") 200–05. The DAB noted that, under 45 C.F.R. § 16.-14, it was bound by all applicable regulations and, therefore, was required to uphold the disallowance regardless of the reasonableness of the rental charges. The DAB further stated that it had no power to direct OHDS to waive the applicable cost principles, but suggested that OHDS consider SLCAP's request. *Id.* at 5–6. OHDS thereafter denied SLCAP's request for a waiver and demanded repayment of the disallowance.

## C. *Proceedings Before the District Court*

SLCAP then filed this action against HHS and OMB in the District Court seeking declaratory, injunctive and other relief. SLCAP did not contest the DAB's determination that the leaseback was not an arms-length transaction; rather, SLCAP raised

various challenges to the constitutionality and legality of the cost principles that had been applied to it. Specifically, SLCAP alleged that the "anti-purchase policy" of Circular A–122 both violated the Fifth Amendment's equal protection component and was arbitrary and capricious under the Administrative Procedure Act ("APA"); SLCAP also claimed that Circular A–122 could not be applied to SLCAP because it was invalidly promulgated. Alternatively, SLCAP argued that HHS unlawfully refused to grant its request for a waiver, and that the DAB did not have jurisdiction in the first instance to hear SLCAP's appeal of the disallowance.

The District Court reached only the last of these claims. Following a hearing on SLCAP's motion for a preliminary injunction (at which the District Judge indicated that he was disinclined to reach the merits of the case), the court permanently enjoined HHS from seeking to collect the disallowance. Purporting to rely on this court's decision in *East Arkansas Legal Services v. Legal Services Corp.,* 742 F.2d 1472 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985), the District Court held that the disallowance constituted a "termination" of funding within the meaning of 42 U.S.C. § 9841(a)(3) and that, by the terms of that statute and its implementing regulations, SLCAP was entitled to a full and fair hearing before an ALJ.[2] *Salt Lake Community Action Program,* 785 F.Supp. at 1014. The trial court held that DAB jurisdiction was expressly precluded where " 'some other hearing process is established pursuant to statute' " and that HHS therefore had relied erroneously on regulations purporting to vest the DAB with jurisdiction over the disallowance claim. *Id.* (quoting 45 C.F.R. Part 16, App. A, § F). The District Court denied HHS' motion for reconsideration.

On appeal, HHS argues that SLCAP waived its objection to the DAB's jurisdiction by failing to raise that claim before the agency and that, even if there was no waiver, the District Court erred in concluding that a

---

**2.** As discussed in more detail in Part II–B *infra,* 42 U.S.C. § 9841(a)(3) provides that "financial assistance ... shall not be terminated or reduced ... unless the recipient has been afforded rea-sonable notice and opportunity for a full and fair hearing." By regulation, such hearing must be held before an ALJ. *See* 45 C.F.R. § 1303.35 (1992).

routine fiscal disallowance constitutes a "termination" within the meaning of 42 U.S.C. § 9841(a)(3). We agree on both counts.

## II. ANALYSIS

### A. *Waiver: SLCAP's Failure to Contest the DAB's Jurisdiction Before the Agency*

HHS argues that because SLCAP failed to contest the DAB's jurisdiction before the agency itself, SLCAP waived that objection and should have been barred from arguing to the District Court that it was entitled to a full and fair hearing pursuant to 42 U.S.C. § 9841(a)(3). SLCAP's response is twofold. First, SLCAP argues that because the DAB has limited jurisdiction, it would have been futile for SLCAP to have raised claims going to the validity or constitutionality of HHS' cost regulations. Alternatively, SLCAP urges that the exception to the exhaustion rule recognized in *Railroad Yardmasters of America v. Harris*, 721 F.2d 1332, 1338 (D.C.Cir.1983), applies here. We reject both of these arguments.

■ We start from the well-settled premise that objections to agency proceedings must be presented to the agency "in order to raise issues reviewable by the courts." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *see also Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 156 (D.C.Cir.1985); *Washington Ass'n for Television & Children v. FCC*, 712 F.2d 677, 680 (D.C.Cir.1983). The principal policy underlying the waiver rule is that "judicial review might be hindered by the failure of the litigant to allow the agency to make a factual record, exercise its discretion, or apply its expertise." *Yardmasters*, 721 F.2d at 1338. Based upon this rule, it seems elementary that if SLCAP believed, as it argued to the District Court, that it was entitled to a full hearing before an ALJ rather than before the DAB, then SLCAP should have made that argument to the DAB.

SLCAP argues strenuously that it could not have waived the right to present its case to the District Court because the DAB historically has refused to entertain the kinds of constitutional and statutory claims pressed in the District Court; thus, it would have been futile for SLCAP to seek such relief from the DAB. SLCAP relies on our holdings that a litigant need not always pursue futile remedies in order to preserve a claim for judicial review, *see, e.g., Washington Ass'n for Television & Children*, 712 F.2d at 682 & n. 9, and that "[r]esort to the administrative process is *futile* if the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter." *Randolph–Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C.Cir.1986) (emphasis in original); *accord James v. Department of Health & Human Servs.*, 824 F.2d 1132, 1139 (D.C.Cir.1987). We reject SLCAP's futility argument as inapplicable, as it seems to flow from a misunderstanding of HHS' position with respect to waiver.

SLCAP probably is correct in asserting that the DAB would not have entertained arguments that the cost regulations were unconstitutional or invalidly promulgated. *See, e.g., Commonwealth of Puerto Rico Dep't of Social Servs.*, Decision No. 1253 at 6 (D.A.B.1991) (under 45 C.F.R. § 16.14, DAB is "bound by the Department's regulations, even if invalid under a constitutional analysis, if those regulations are applicable"); *Delaware Dep't of Health & Social Servs.*, Decision No. 732 (D.A.B.1986) (DAB has no authority to pass on constitutionality of underlying statute). However, we do not understand HHS to argue that SLCAP waived its challenges to the validity or constitutionality of the underlying regulations by failing to present them to the DAB. Rather, HHS' waiver argument is limited, as is our holding, to SLCAP's claim that 42 U.S.C. § 9841(a)(3) entitles SLCAP to a hearing before an ALJ rather than the DAB.

As an alternative line of defense, SLCAP relies on our decision in *Yardmasters*. In that case, we allowed the petitioner to raise for the first time before this court the argument that the three-member National Mediation Board had no power to decide a dispute while two of its seats were vacant. *Yardmasters*, 721 F.2d at 1338–39. We noted there that the substantive issue was solely one of statutory interpretation and that its

resolution did not implicate the traditional concerns motivating the exhaustion rule—the need for a record or for the exercise of agency discretion or expertise. *See id.*

SLCAP is not the first litigant to argue that *Yardmasters* created a broad exception to the exhaustion requirement, nor is this the first time we unequivocally reject that contention. As we very recently held in *Mitchell v. Christopher*, 996 F.2d 375, 378 (D.C.Cir. 1993), *Yardmasters* applies only to "challenges that concern the very composition or 'constitution' of an agency." *See also Natural Resources Defense Council v. Thomas*, 805 F.2d 410, 428 (D.C.Cir.1986) (*Yardmasters* applies only to the "unusual and limited type of attack" challenging the "proper constitution of the agency"); *Linemaster Switch Corp. v. EPA*, 938 F.2d 1299, 1308 (D.C.Cir. 1991) (same). Thus, on facts analogous to those presented here, *Mitchell* held that the government could not raise for the first time in federal court a challenge to the jurisdiction of the Foreign Service Grievance Board ("FSGB") of the State Department. As in this case, the governing statute deprived FSGB of jurisdiction to hear any complaint or appeal where a specific statutory hearing procedure existed. *See Mitchell*, 996 F.2d at 377. The question on the merits therefore was whether such a separate statute actually applied. The court, however, did not reach the issue, as it held, in part, that the government should have raised the jurisdictional question before the agency. *See id.* at 379.

While we concede, as we have before, that *Yardmasters* might at first blush be taken to create a broad exception allowing issues of statutory construction or agency jurisdiction to be raised for the first time on judicial review, we think our subsequent cases conclusively resolve any uncertainty on this point. As we stated in *Mitchell*:

> Our narrow reading of *Yardmasters* is, in part, based on our recognition that there are precious few cases involving interpretation of statutes authorizing agency action in which our review is not aided by the

agency's statutory construction—even when the issue can be properly characterized as going to an agency's jurisdiction (which itself is often disputed).

*Id.* at 379.

We see no reason why SLCAP could not have argued to the DAB the simple proposition that a disallowance constitutes a "termination" within the meaning of 42 U.S.C. § 9841(a)(3) and its implementing regulations, and that SLCAP therefore was entitled to a full and fair hearing before an ALJ. SLCAP nowhere argues that the DAB would not have had the authority to interpret and apply regulations governing its own jurisdiction; indeed, the crux of SLCAP's futility argument, discussed above, is that the DAB is strictly *bound* by its governing regulations. We note that HHS regulations explicitly prescribe a multi-part procedure by which the DAB Chair determines whether that body has jurisdiction over a matter, *see* 45 C.F.R. Part 16, App. A, § G (1992), and that published decisions demonstrate that the DAB frequently rules on its own jurisdiction. *See* A.A. 274–86 (reprinting DAB decisions). In sum, we find traditional exhaustion principles applicable and we reject SLCAP's suggestion that *Yardmasters* or the futility doctrine excuses its failure to challenge the DAB's jurisdiction before the agency.

Ordinarily, our inquiry might end with the conclusion that SLCAP had waived its jurisdictional claim, and we would vacate the District Court's decision on the merits of that claim. In this case, however, we hesitate to rest solely on a finding of waiver because we do not believe the District Court was given adequate opportunity to consider the waiver problem. As we read the record before us, HHS presented its claim of waiver only sparsely, almost in passing; indeed, the issue was not explored, or even mentioned, during the preliminary injunction hearing in the District Court. Given the multiplicity of substantive issues presented in SLCAP's complaint and the procedural posture before the District Court,[3] we believe that HHS' waiver

---

3. This case was argued in the District Court on SLCAP's motion for a preliminary injunction. At the close of the hearing, the District Judge stated that he was disinclined to reach the merits of the

case because HHS had not had adequate opportunity to present its case. The court nevertheless proceeded to dispose of this case on the merits,

claim was not adequately brought to the attention of the District Court.

The question whether a disallowance constitutes a "termination" of financial assistance is a straightforward one whose resolution has substantial implications for the agency—either HHS can continue in disallowance cases to provide grantees a streamlined appeal procedure before the DAB or it must afford all grantees a full hearing before an ALJ. It makes no sense for us to rest solely on a finding of a waiver when the District Court failed to address it and instead reached a patently erroneous resolution of the substantive question. Thus, we turn to the merits of SLCAP's claim that the DAB lacked jurisdiction to hear its appeal.

B. *Whether the Disallowance Constituted A "Termination" Under 42 U.S.C. § 9841(a)(3)*

■ The issue presented is whether HHS' disallowance of certain costs charged to SLCAP's Head Start grant constituted a "termination" of financial assistance within the meaning of 42 U.S.C. § 9841(a)(3). If it did, then SLCAP was entitled to contest the validity of the disallowance in a full hearing before an ALJ. If it did not, the DAB's jurisdiction was perfectly proper.

In cases of pure statutory construction, the court must "try to determine congressional intent, using 'traditional tools of statutory construction.' If [it] can do so, then that interpretation must be given effect...." *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). If " 'the statute is silent or ambiguous with respect to the specific issue,' " then the court defers to the agency's construction, so long as it is rational and consistent with the statute. *Id.* (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

[I]t is only legislative intent to delegate such authority that entitles an agency to

perhaps because the waiver issue was not

advance its own statutory construction for review under the deferential second prong of *Chevron. See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority.... Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*

*Natural Resources Defense Council v. Reilly*, 983 F.2d 259, 266 (D.C.Cir.1993) (quoting *Kansas City v. Department of Housing & Urban Dev.*, 923 F.2d 188, 191–92 (D.C.Cir. 1991)).

In this case, we find an implicit delegation from Congress to HHS to interpret "termination" under 42 U.S.C. § 9841(a)(3). Accordingly, we hold that the District Court erred in concluding, contrary to HHS' regulations, that the routine fiscal disallowance at issue here constituted a "termination" of financial assistance requiring a full hearing before an ALJ. The District Court was wrong in suggesting that our precedent compels such a result; thus, we defer to the agency's reasonable construction of the governing statute.

1. *Statutory and Regulatory Background*

Congress has provided Head Start grantees with a procedural safeguard against arbitrary termination or reduction of grant funds. The Act provides that:

[t]he Secretary shall prescribe procedures to assure that ... financial assistance under this subchapter shall not be terminated or reduced, an application for refunding shall not be denied, and a suspension of financial assistance shall not be continued for longer than 30 days, unless the recipient has been afforded reasonable notice and opportunity for a full and fair hearing.

42 U.S.C. § 9841(a)(3). While the Act does not itself define "termination," HHS regulations define termination of a grant to mean "permanent withdrawal of the grantee's au-

squarely presented.

thority to obligate previously awarded grant funds before that authority would otherwise expire." 45 C.F.R. § 1303.2 (1992). In accordance with the Act, HHS regulations empower the agency to "terminate financial assistance to a grantee in whole or in part for failure to comply with any requirement," but only "pursuant to reasonable notice and the opportunity for a full and fair .hearing." 45 C.F.R. § 1303.33(a) (1992).

Head Start grantees are subject to the DAB appeals procedure for all matters *other than* "suspension, *termination* and denial of refunding." *See* 45 C.F.R. § 1301.34 (1992) (emphasis added); *see also* 45 C.F.R. § 1301.10 (1992) (except as provided in § 1301.34, the Department grant appeals process set out in 45 C.F.R. Part 16 "shall apply to all grants made under the [Head Start] Act"). HHS plainly does not consider fiscal disallowances of the sort at issue here to constitute "terminations" of financial assistance of section 9841(a)(3), for the DAB is granted jurisdiction to review "disallowance[s] or other determination[s] denying payment of an amount claimed under an award, or requiring return or setoff of funds already received." 45 C.F.R. Part 16, App. A, § (C)(a)(1).

### 2. *Analysis*

HHS argues that routine fiscal disallowances do not constitute "terminations" under section 9841 and that its interpretation of "termination," as embodied in its regulations, is entitled to deference. For its argument that a full and fair hearing is required, SLCAP relies almost exclusively (as did the District Court) on this court's decision in *East Arkansas Legal Services v. Legal Services Corp.*, 742 F.2d 1472 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). *East Arkansas*, discussed more fully below, analyzed an identical statutory provision and held that an agency's *setoff of carryover grant funds against a subsequent grant* constituted a "termination." The District Court here found *East Arkansas* controlling because, in its view, that case had decided that "a partial recovery of funds already paid by an agency in an analogous situation constitutes a termination." *Salt*

*Lake Community Action Program,* 785 F.Supp. at 1014.

The language of section 9841, standing alone, is only somewhat instructive. Because the statute distinguishes between "suspensions" of financial assistance and "terminations," the latter must, at a minimum, involve a *permanent* reduction or cessation of funding. HHS' definition of termination embodies this understanding: it defines "termination" to mean "permanent withdrawal of the grantee's authority to obligate previously awarded grant funds before that authority would otherwise expire." 45 C.F.R. § 1303.2. This definition is not unreasonable, and neither SLCAP nor the District Court argued that it is.

Thus, under HHS' definition, a disallowance facially is *not* a termination, because HHS assures the court that if SLCAP

> had other allowable program expenditures for th[e] grant year [in which costs were improperly charged] that it did not claim because it had already exceeded the amount of the grant, it could substitute those costs for the unallowable rental costs up to the amount of the grant.

Brief for Appellants at 17. Thus, *a disallowance does not operate to permanently withdraw the grantee's authority to spend grant funds*—it merely mandates that the grantee spend the funds differently.

It is precisely for this reason that *East Arkansas* is distinguishable. *East Arkansas* presented the issue whether an agency's *setoff* of the amount of excess unspent funds from a previous grant against the grant for a subsequent year, constituted a termination of financial assistance that triggered a full hearing. As here, the underlying statute provided for reasonable notice and a ·full and fair hearing before such termination. *See East Arkansas,* 742 F.2d· at 1477. The regulations also were analogous in defining termination of assistance to mean "a decision that financial assistance to a recipient will be permanently terminated in whole or in part prior to expiration of the recipients' current grant or contract." *Id.*

Thus, in *East Arkansas,* as here, for agency action to constitute a "termination," the

action must have had a *permanent* impact on the grantee's ability to use grant funds at a time when the grantee still possessed the ability or right to obligate those funds. In *East Arkansas,* that condition clearly was met because a setoff reduced the net amount of each monthly installment the grantee would receive in the upcoming year. *See id.* at 1478. By contrast, in the instant case, a determination of disallowance does not result in funds being entirely withdrawn from the grantee's purse. The grantee still can allocate those funds to any allowable, but uncharged, costs incurred in the same grant year. There is therefore no "permanent withdrawal of the grantee's authority to obligate previously awarded grant funds" and no "termination" within the meaning of the statute.

SLCAP's argument that HHS' interpretation of the statute is unreasonable because it "relegates SLCAP to an administrative process that is incapable of providing it complete relief," proves too much. Brief for Appellee at 16. The mere possibility that a Head Start grantee might have constitutional or other objections to the application of a particular regulation within the DAB's jurisdiction does not render that jurisdiction invalid *ab initio.* Because the District Court erred in holding that a routine fiscal disallowance constitutes a termination of financial assistance triggering a full hearing, we reverse its decision.

## III. CONCLUSION

We reverse the judgment of the District Court and remand for the court to address SLCAP's remaining constitutional, APA and other claims.

*So ordered.*