Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 15, 2003          Decided June 20, 2003

No. 01-1101

STATE OF NEBRASKA, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

AMERICAN WOOD PRESERVERS INSTITUTE, ET AL.,
INTERVENORS

———

On Petition for Review of an Order of the
Environmental Protection Agency

———

*Jon C. Bruning*, Attorney General for the State of Nebraska, argued the cause for petitioners. With him on the briefs were *Donald B. Stenberg*, Attorney General at the time the briefs were filed, *Jodi M. Fenner*, Assistant Attorney Gener-

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

al, *Leo P. Dobrovolny, Jr.*, *Sam Kazman*, and *Ben C. Lieberman*.

*J. Steven Rogers*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief was *Caroline H. Wehling*, Assistant General Counsel. *John C. Cruden*, Assistant Attorney General, entered an appearance.

*Erik D. Olson* argued the cause for intervenor Natural Resources Defense Council. With him on the brief was *Aaron Colangelo*.

Before: EDWARDS, RANDOLPH, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The Safe Drinking Water Act directed EPA to promulgate national primary drinking water regulations. The regulations established enforceable standards, called maximum contaminant levels, limiting the amount of specified contaminants permitted in drinking water from public water systems.[1] 42 U.S.C. § 300g–1(b); *see Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1287 (D.C. Cir. 2000). Amendments to the Act in 1996 required EPA to promulgate a national primary drinking water regulation for arsenic by January 2001. Safe Drinking Water Act Amendments of 1996, Pub. L. No. 104–182, § 109(a)(12)(A), 110 Stat. 1613, 1627–28 (1996). EPA duly initiated a rulemaking proceeding and, after receiving comments on a proposed rule, published a final regulation setting the maximum contaminant level for arsenic at .01 mg/L, effective as of 2006. *National Primary Drinking Water Regulations; Arsenic and Clarifications to Compliance and New Source Contaminants Monitoring*, 66 Fed. Reg. 6976, 6981, 6989 (Jan. 22, 2001) ("Arsenic Rule"); *see also Minor Clarification of National Primary Drinking Water Regulation for Arsenic*, 67 Fed. Reg. 78,203 (Dec. 23, 2002). On March 5, 2001, the

---

[1] A public water system is "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C. § 300f(4)(A).

State of Nebraska and the City of Alliance, Nebraska, filed a petition for review in this court, challenging the Act and the Arsenic Rule on constitutional and statutory grounds. Other parties intervened for and against the petitioners' position.

Petitioners did not present to EPA any of the objections they now raise in this court. They acknowledge the rule that "[a]bsent special circumstances, a party must initially present its comments to the agency during the rulemaking in order for the court to consider the issue." *Tex Tin Corp. v. United States EPA*, 935 F.2d 1321, 1323 (D.C. Cir. 1991). Although petitioners concede that they have waived some of their objections, they believe they are entitled to go forward on their claims that the Arsenic Rule and the Act, to the extent it regulates noncommunicable water contaminants, exceed the federal government's power under the Commerce Clause and violate the Tenth Amendment. With respect to the claims regarding the Act, we agree with petitioners that these are properly before us. Agencies do not ordinarily have jurisdiction to pass on the constitutionality of federal statutes. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 214 (1994). Petitioners would have accomplished nothing if they had presented these objections to EPA. *See Salt Lake Cmty. Action Program, Inc. v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993).

As to petitioners' constitutional attack on the regulation, they believe this too would have been futile to raise during the EPA proceedings. In requiring EPA to promulgate a national primary drinking water regulation for arsenic, the 1996 amendments state that the regulation "shall apply to each public water system in each State." 42 U.S.C. § 300g (with certain exceptions not relevant here). From this petitioners conclude that EPA could not have tailored the Arsenic Rule in response to their arguments. *See Meredith Corp. v. FCC*, 809 F.2d 863, 872 (D.C. Cir. 1987). We see the matter differently. The Act did not bar EPA from considering petitioners' arguments regarding the regulation and it did not necessarily preclude EPA from designing a rule in response to their arguments, gathering evidence to evaluate their claims, or interpreting the Act in light of their position.

Perhaps EPA could have formulated a rule setting a national standard applicable to all public water systems to the extent the system shipped or received water across state lines, or a rule containing an exception for any public water system that could prove it had no connection to interstate commerce – rules that might have met petitioners' objections to the regulation of entirely intrastate water. Petitioners also believe that *Railroad Yardmasters of America v. Harris*, 721 F.2d 1332, 1338–39 (D.C. Cir. 1983), justified their failure to offer EPA their claims regarding the proposed Arsenic Rule. *Yardmasters* decided the merits of a contention, first raised on appeal, that two vacancies on the three-member National Mediation Board deprived the Board of any authority to render a decision. Later decisions have limited the case to challenges concerning the "very composition or 'constitution' of an agency." *Mitchell v. Christopher*, 996 F.2d 375, 378–79 (D.C. Cir. 1993). Petitioners' arguments are not of that sort. We therefore conclude that petitioners have not preserved their objections to the Arsenic Rule.

With respect to the constitutionality of the Act, the Commerce Clause authorizes Congress to "regulate Commerce . . . among the several states." U.S. CONST. art. I, § 8, cl. 3. The Act exceeds congressional power, petitioners tell us, because it regulates the intrastate distribution and sale of drinking water. The challenge is to the Act on its face. To succeed, petitioners therefore must show that the Act would be constitutional under "'no set of circumstances.'" *Amfac Resorts, L.L.C. v. United States Dep't of Interior*, 282 F.3d 818, 826 (D.C. Cir.) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), *vacated in part on other grounds sub nom. Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 71 U.S.L.W. 4399 (May 27, 2003); *see also Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1077–78 (D.C. Cir. 2003). Petitioners fall well short of satisfying that considerable burden. Congress may regulate, pursuant to its commerce power, "persons and things in interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558 (1995).[2] According to data EPA

---

[2] Although the Court in *Lopez* did not cite the *Salerno* no-set-of-circumstances test, it did strike down the Gun–Free School Zones

collected, a number of water utilities sell substantial volumes of drinking water across state lines. *See* Brief for Respondent at Attachments 1 & 2 (collecting information from www.epa.gov/safewater/data/getdata.html).[3] Each of these interstate sales presents a set of circumstances under which the Act is a valid exercise of power under the Commerce Clause. We therefore reject petitioners' facial attack on this ground, and do not address whether the intrastate sale of drinking water has a sufficiently substantial impact on interstate commerce to justify federal regulation. *See Reno v. Condon*, 528 U.S. 141, 148–49 (2000).

Because the Commerce Clause provides the constitutional authority for the Act, the only issue under the Tenth Amendment is whether the Act regulates the states in a permissible manner. *See Condon*, 528 U.S. at 149. The Act does not compel the states to pass legislation or to enforce the federal standards for arsenic. Rather, it regulates the states only in their capacity as public water system owners. The Act therefore comports with the Tenth Amendment. *See id.* at 151.

The petition for judicial review is denied.

*So ordered.*

---

Act on the ground that "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Lopez*, 514 U.S. at 567. After *Lopez* we therefore have continued to invoke the *Salerno* test in response to a facial challenge based on the Commerce Clause. *See Rancho Viejo, LLC*, 323 F.3d at 1077–78.

[3] Although the administrative record does not contain these facts, we take judicial notice of the information on the EPA's database. *See* FED. R. EVID. 201(b) & (f); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002); *cf. Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991).