In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-4166

KLODIANA PASHA,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

———————

Petition to Review an Order of the
Board of Immigration Appeals.
No. A79 290 656

———————

ARGUED NOVEMBER 9, 2005—DECIDED DECEMBER 29, 2005

———————

Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.   At the risk of sounding like a broken record, we reiterate our oft-expressed concern with the adjudication of asylum claims by the Immigration Court and the Board of Immigration Appeals and with the defense of the BIA's asylum decisions in this court by the Justice Department's Office of Immigration Litigation. See *Benslimane v. Gonzales*, No. 04-1339, 2005 WL 3193641, at *1 (7th Cir. Nov. 30, 2005), and cases cited there. The performance of these federal agencies is too often inadequate. This case presents another depressing example.

Klodiana Pasha, an Albanian, was active in Albania's Democratic Party in 2000. According to her testimony before the immigration judge, she was involved in a local election that year that was won by the Socialist Party, the dominant party in Albania. When she complained about ballot stuffing by the party, she was severely beaten by its thugs. Summoned shortly afterwards to the local prosecutor's office, she was told that she would be criminally prosecuted if she testified in court about the ballot stuffing. She testified nonetheless and later received death threats and was arrested by the police and told she would have to appear in court to respond to a complaint lodged against her by the Socialist Party. Rather than keep the court date she fled the country and eventually reached the United States and applied for asylum as a victim of political persecution. All this is according to her testimony. But in addition to submitting published materials that confirm the misconduct of the Socialist Party toward its political foes, she attached to her application various official Albanian documents concerning herself, including subpoenas, a police report, and a summons.

At her hearing the immigration service's lawyer presented a forensic document examiner employed by the service named Gideon Epstein who testified that four of the nine documents that Pasha had attached to her application for asylum were probably fakes (he didn't analyze the other five). He based this assessment on the fact that the documents had been produced by color laser technology, which he testified was not a normal way in which a form document is produced because it makes only one copy at a time and is therefore expensive (and Albania is poor). Also, the printed text on the documents, as distinct from the handwriting that filled in the blanks in them, did not contain the diacritical marks (accents) that are part of the spelling of

many of the Albanian words in that text. Epstein acknowl-edged, however, that he does not speak or read Albanian and had no access to official Albanian texts comparable to Pasha's documents. Admitting that he could not "rule out" the possibility that they were authentic, he concluded merely that they were "probably not what they're purported to be." The immigration judge concluded that the docu-ments were of "highly questionable authenticity" and solely on this ground rejected Pasha's testimony about being persecuted for activities on behalf of the Democratic Party.

Pasha filed a notice of appeal with the Board of Immigra-tion Appeals. The form that the Board supplies for such notices (Form EOIR-26) requires the appellant to "state in detail the reason(s) for this appeal." In the space pro-vided, Pasha's then lawyer wrote only (so far as bears on her petition in this court) that "the [immigration] judge erred in evaluating all the evidence presented in the case, particularly as it relates to future persecution. Other matters of record to be stated in a written brief." The lawyer filed a written brief, but because he failed to attach the required certificate (see 8 C.F.R. § 1003.3(c)(1)) stating that he had served the brief on the Department of Homeland Security, the Board refused to consider it. (The record is silent on whether he served the department. The brief is not in the record, and when the Clerk of our court asked the Board for a copy of it he was told that he would have to file a request for it under the Freedom of Information Act!) The Board, or rather a single member authorized to act for the Board, went on to affirm the immigration judge's decision without opinion.

The government argues that by failing to explain in detail, either in the notice of appeal or in a properly certificated brief, the grounds for her appeal from the immigration

judge to the Board of Immigration Appeals, Pasha failed to exhaust her administrative remedies and as a result we have no jurisdiction to review the Board's order affirming the order of removal. 8 U.S.C. § 1252(d)(1); *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004); *Ishak v. Gonzales*, 422 F.3d 22, 31 (1st Cir. 2005). So confident is the government of the correctness of its argument that it has not deigned to respond to the merits of the appeal. This was a tactical error. The government's confidence is unwarranted. The reason is found in a "warning" that the Board includes in its notice-of-appeal form. The warning, which is based on a regulation, 8 C.F.R. §§ 1003.1(d)(2)(i)(A), .3(b); see *In re Valencia*, 19 I. & N. Dec. 354, 355 (BIA 1986), states: "You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing."

The Board could have invoked this rule and dismissed Pasha's appeal summarily because the passage we quoted in which her lawyer explained the reasons for the appeal was wholly lacking in specificity. 8 C.F.R. § 1003.3(b); *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 820-21 (9th Cir. 2003); *Bayro v. Reno*, 142 F.3d 1377, 1379 (11th Cir. 1998); *Townsend v. U.S. Dep't of Justice INS*, 799 F.2d 179, 182 (5th Cir. 1986). But the Board did not do this. Instead it affirmed on the merits—as it was entitled to do. The requirement of specificity is not jurisdictional. The Board can waive a failure to exhaust, *Abdelqadar v. Gonzales*, 413 F.3d 668, 670-71 (7th Cir. 2005), and so can choose between dismissing the appeal for failure to comply with the requirement of specificity and waiving the failure and proceeding to the merits. It chose the latter course in this case as in *Hassan v. Gonzales*, 403 F.3d 429, 433 (6th Cir. 2005).

There is an analogy to the jurisdiction of the Supreme Court (and of lower federal courts in habeas corpus proceedings brought by state prisoners) to review state court decisions. Suppose that in the state supreme court the defendant argues that a critical ruling against him at trial violated his federal constitutional rights. Only he failed to object at trial and under state law that is a forfeiture and the state supreme court is not required to consider the objection. But the court decides to ignore the forfeiture and goes ahead and decides the merits of the constitutional challenge. If the defendant then seeks review in the U.S. Supreme Court, the state cannot challenge the Court's jurisdiction on the ground that he had forfeited his objection and therefore its rejection by the state supreme court rests on an adequate state ground. For that was not the ground (not even an alternative ground) of the state supreme court's decision. E.g., *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Harris v. Reed*, 489 U.S. 255, 260-61 (1989); *Ford v. Johnson*, 362 F.3d 395, 397-98 (7th Cir. 2004). The government has given us no reason to take a different approach to challenges that the Board of Immigration Appeals could have rebuffed on unexceptionable procedural grounds but chose instead to reject on the merits. *Hassan v. Gonzales*, *supra*, 403 F.3d at 433.

The government's lawyer conceded at argument that if the Board, rather than affirming summarily, had written an opinion, failure to exhaust administrative remedies would not be a bar to our consideration of the merits. We don't get the distinction. Summary affirmance without opinion has become a common method by which busy tribunals, including several of the federal courts of appeals, dispose of many cases—on the merits. We are given no reason to suppose that summary affirmances by the Board have a different meaning—specifically, that they

are dismissals of the appeal whenever there are grounds for dismissal even if the Board says "affirmed" and even though the Board's rules distinguish between affirmance and dismissal.

But when there is no opinion and no brief or statement of grounds in the notice of appeal, it becomes uncertain what exactly the Board decided when it affirmed the immigration judge's decision. The Board in this case may have confined its merits determination to the question of the evidence bearing on the risk of future persecution, since that was the only question flagged in the notice of appeal, and may have ignored the adequacy of the document expert's testimony, which related to evidence of past persecution, on the ground that Pasha had failed to exhaust that claim. Such an inference would be plausible had the Board said it was confining its attention to the question of the risk of future persecution and disregarding the others because they hadn't been mentioned in the notice. But it couldn't have said that in *this* case; for when the appeal is decided by a single member of the Board, he "shall issue an order that reads as follows: 'The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 CFR 1003.1(e)(4).' An order affirming without opinion, issued under authority of this provision, shall not include further explanation or reasoning." 8 C.F.R. § 1003.1(e)(4)(ii). The regulation further provides that to be authorized to decide the appeal the single member must have "determine[d] that the result reached in the decision under review was correct; [and] that any errors in the decision under review were harmless or nonmaterial," § 1003.1(e)(4)(i), and this might seem to imply that the single member in this case must have reached the merits, agreed with the immigration judge, and not

relied on any procedural pratfalls. But this is uncertain because the regulation further provides that the single member's order of summary affirmance merely "approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision." § 1003.1(e)(4)(ii).

An inference that the "blind" affirmance by the single Board member was not actually based on a resolution of the merits of all the issues decided by the immigration judge would be plausible if the appellant had filed a brief limited to a single question (implying waiver of other questions), or if the notice of appeal had stated one question with the requisite specificity and passed over the other questions in silence (again implying waiver), as in *Zara v. Ashcroft*, 383 F.3d 927, 931 (9th Cir. 2004), or if the other questions were patently without merit, 8 C.F.R. § 1003.1(e)(4)(i), or had not even been presented to the immigration judge, or were beyond the competence of the Board to resolve. But none of these things is true in this case, except the last, and it is not a bar to our consideration of a question, as we'll see when we discuss Pasha's constitutional complaint about ineligibility for voluntary departure if her asylum claim is denied.

The documents issue had been central to the proceedings before the immigration judge, he had discussed it at length, and though it was not mentioned in the notice of appeal, the question that *was* mentioned—concerning the evidence of future persecution—wholly lacked the specificity required by the Board's rules. So if the Board member considered the merits, as his summary affirmance indicates, it is unlikely that without saying so he had failed to consider the main issue presented to the immigration judge. We conclude that we have jurisdiction to consider it.

The government's misplaced confidence that we lack jurisdiction to consider that issue is paralleled by the misplaced confidence of Pasha's lawyer that the government's jurisdictional argument was so negligible as to dispense with any need to explore alternative grounds for preventing the removal of his client besides errors committed by the immigration judge. He might have argued that Pasha's previous lawyer had rendered ineffective assistance of counsel by failing to attach to the appeal brief the required certificate of service, *Benslimane v. Gonzales*, *supra*, at *3, or that the Board should stay Pasha's removal to allow an immigration judge to rule on her application to adjust her status to that of a lawful resident on the basis of her having married an American citizen and had a child by him. To make either argument, Pasha's current lawyer would have had to file with the Board a motion to reopen pursuant to 8 C.F.R. § 1003.2(c), along with a motion to stay Pasha's removal pending a decision on the motion to reopen. (Filing a motion to reopen does not automatically stay the removal order. 8 C.F.R. § 1003.2(f).) Even if he had done that, his second argument, at least, would probably have failed; because the marriage took place after the initiation of removal proceedings, the Board would have granted the motion and stayed removal only if the government had not objected to the reopening. *In re Velarde-Pacheco*, 23 I. & N. Dec. 253, 256-57 (BIA 2002).

Pasha's lawyer is luckier than the government's. His gamble succeeded, and now the government finds itself in the awkward position of having failed to respond to the merits of its opponent's appeal. This does not result in an automatic reversal. An appellee (or "respondent," as the appellee in an appeal from an administrative agency to a court is called) is not required to file a brief, or otherwise participate. Fed. R. App. P. 31(c); 7th Cir.

R. 31(d); *Allgeier v. United States*, 909 F.2d 869, 871-72 n. 3 (6th Cir. 1990). The court must still determine as best it can the merits of the appeal and reverse only if it decides that the appeal is indeed meritorious.

The principal ground of the appeal relates to the infirmities in document expert Epstein's evidence. He should not have been permitted to testify. Although the *Daubert* filter against unreliable expert testimony is not strictly applicable to proceedings before administrative agencies, such as the Immigration Court, the "spirit of *Daubert*" is applicable to them. *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 539 (7th Cir. 2005); *Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004). As we said in *Niam*, " 'Junk science' has no more place in administrative proceedings than in judicial ones." *Id*. Not knowing Albanian, Epstein was not a proper witness to testify that Albanian is *always* written with diacritical marks. Hebrew for example is normally written without diacritical marks (signifying vowels). Even if Albanians would like to use the diacritical marks in all their printed texts, their ability to do so would depend on the existence of typewriter or computer fonts in Albanian, and we are not told whether, when the documents in question were printed (and we do not even know when that was), the Albanian government—which had emerged from the era of communist dictatorship in a state of extraordinary disarray, U.S. Department of State, "Background Note: Albania" (Sept. 2005), http://www.state.gov/r/pa/ei/bgn/3235.htm—possessed such fonts.

As for Epstein's speculation that the Albanian government would not use color laser printing to prepare official forms, this again depends on something about which Epstein is confessedly ignorant, namely that government's printing

resources at the time these documents were printed, whenever that was. Considering the number of asylum applicants from Albania and the fact that there are an estimated 400,000 to one million Albanians in the United States, Bernd J. Fischer, "Albanian Refugees Seeking Political Asylum in the United States: Process and Problems," 31 *Journal of Ethnic & Migration Studies* 193, 195 (2005); Diana Jean Schemo, "Long-Distance Ties That Bind," *N.Y. Times*, May 1, 1999, p. B1, the Department of Homeland Security should be able to find a witness competent to testify to the likelihood that purportedly official Albanian documents produced by color laser printing and barren of diacritical marks probably were forged.

Pasha also presents a constitutional challenge. We do not have to consider it, since the government does not discuss it and since the challenge will be moot if Pasha, on remand, prevails on her asylum claim and thus establishes her right to remain in the United States. We mention it only for its bearing on exhaustion.

Some illegal aliens whom the government seeks to remove are eligible for voluntary departure in lieu of removal. Voluntary departure confers a variety of advantages, especially on aliens wanting another shot at becoming legal residents of the United States. *Alimi v. Ashcroft*, 391 F.3d 888, 892 (7th Cir. 2004); *Bocova v. Gonzales*, 412 F.3d 257, 265 (1st Cir. 2005); but cf. *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 651 (7th Cir. 2004). But to be eligible for voluntary departure the alien must have lived in the United States continuously for at least a year before being served with a notice to appear at a removal proceeding. 8 U.S.C. § 1229c(b)(1)(A). Pasha did not.

It is difficult for asylum applicants to qualify for voluntary departure if like Pasha they apply promptly for asylum

upon entering the United States, because, if we may judge from cases like *Shire v. Ashcroft*, 388 F.3d 1288, 1294 (9th Cir. 2004), and *Prokopenko v. Ashcroft*, 372 F.3d 941, 943 (8th Cir. 2004), they are likely to receive their notice to appear within a few months of filing their applications. But they have a year from entry to apply for asylum, 8 U.S.C. § 1158(a)(2)(B), and so by waiting till the end of the period to file their application for asylum they can protect their eligibility for voluntary departure. Pasha argues that because it wants removal proceedings to be completed as soon as possible after the arrival of the illegal alien, the government is being perverse and arbitrary, and thus denying the equal protection of the laws (a denial of equal protection, when committed by the federal government, violates the due process clause of the Fifth Amendment), by discriminating against prompt applicants for asylum, such as herself. Cf. *Francis v. INS*, 532 F.2d 268, 272-73 (2d Cir. 1976); *Hernandez-Mezquita v. Ashcroft*, 293 F.3d 1161, 1163-64 (9th Cir. 2002).

Whatever the merits of the argument, it is not subject to the requirement of exhaustion of administrative remedies. *Sayaxing v. INS*, 179 F.3d 515, 522 (7th Cir. 1999); *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). Like most administrative agencies, see, e.g., *Nebraska v. EPA*, 331 F.3d 995, 997 (D.C. Cir. 2003); *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981-82 and n. 3 (9th Cir. 2002), the Board of Immigration Appeals refuses to adjudicate the constitutionality of the statutes under which it operates, see *Soberanes v. Comfort*, *supra*, 388 F.3d at 1310; *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995); *In re L-S-J*, 21 I. & N. Dec. 973, 974 (BIA 1997), such as the statute requiring a year's residency in order to be eligible for voluntary departure. Actually, these

cases and many others, e.g., *Johnson v. Robinson*, 415 U.S. 361, 368 (1974), say that agencies have no jurisdiction to decide such issues.

Why agencies refuse to pass on constitutional questions—why indeed they might lack jurisdiction to do so—has never been adequately explained. The Federal Trade Commission thinks the refusal inconsistent with Article VI of the Constitution, which both makes the Constitution, along with federal statutes and treaties, "the supreme Law of the Land" and requires all federal and state officers to take an oath to "support this Constitution." *In re Verrazzano Trading Corp.*, 91 F.T.C. 888, 952-53 (1978). But the "law of the land" provision in the Constitution is intended merely to confirm the supremacy of federal law, and the oath is a pledge of fealty to that supremacy; these are not delegations to every subordinate official to indulge his private interpretations of the Constitution. The BIA is a subordinate unit in the Department of Justice, and the Attorney General may simply want to reserve to himself, or to the courts, any judgment as to the constitutionality of the Board's procedures. See *Oestereich v. Selective Service System Local Bd. No. 11*, 393 U.S. 233, 242-43 (Harlan, J., concurring). There is also a competence issue, see *id.*; *McBride Cotton & Cattle Corp. v. Veneman*, *supra*, 290 F.3d at 981-82 and n. 3; remember that the appeal here was to a single member of the Board.

But all that matters is that if the Board of Immigration Appeals for whatever reason won't consider constitutional challenges—and it won't—there is scant reason to require the alien to make them to the Board. And so the government's failure to address Pasha's constitutional argument, on the ground that the appeal is barred by the exhaustion doctrine, is another lapse. This case has been

poorly handled by the government at every stage: the proceeding before the immigration judge, the summary affirmance by the Board of Immigration Appeals, and the decision by the government in this court to put all its eggs in a basket that it should have known would not hold them.

The order of removal is vacated and the case returned to the Board of Immigration Appeals for further proceedings consistent with this opinion.

A true Copy:

  Teste:

        _____
        *Clerk of the United States Court of*
        *Appeals for the Seventh Circuit*